UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:<br><br>CIRCUIT CITY STORES, INC., et al.,<br><br>Debtors. | Case No. 08-35653-KRH<br>Chapter 11 |
| ALFRED H. SIEGEL, Trustee of the Circuit City Stores, Inc. Liquidating Trust<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA SELF-INSUREDS' SECURITY FUND, and ANDRÉ SCHOORL, solely in his capacity as Acting Director of the California Department of Industrial Relations<br><br>Defendants. | APN 18-03040-KRH |

**MEMORANDUM OPINION**

This adversary proceeding (this "Adversary Proceeding") concerns the scope of a settlement agreement (the "Settlement Agreement") between plaintiff, Alfred H. Siegel (the "Trustee"), Trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), and defendants, the California Self-Insureds' Security Fund (the "Fund") and André Schoorl, solely in his capacity as Acting Director of the California Department of Industrial Relations (the "Director" and, together with the Fund, the "Defendants" and the Defendants and the Trustee, collectively, the "Parties"). On July 25, 2018, the Court conducted a hearing on the Motion of Plaintiff Trustee Alfred H. Siegel for Summary Judgment, and Memorandum in Support Thereof

1

[Docket No. 18] (the "Motion"). After considering the applicable statutory authority, the case law, the pleadings, and the arguments of counsel, the Court now determines that the Motion should be granted. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

On November 10, 2008 (the "Petition Date"), Circuit City Stores, Inc. ("Circuit City") and Circuit City Stores West Coast, Inc. ("CC-West" and, together with Circuit City, the "Debtors") filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").[2]

At the time of the bankruptcy filing and for a short period thereafter, Circuit City conducted business as a national retailer of consumer electronics with operations across the United States, including the state of California. For its operations in the state of California, the Debtors elected to self-insure their workers' compensation obligations.[3] To secure the payment of any such claims that arose in California, the Debtors posted an irrevocable standby letter of credit issued by Bank of America N.A. in the amount of $14,119,256 (the "Letter of Credit").[4] The Letter of Credit remained in place after the Petition Date. In connection with their decision to self-insure workers' compensation claims, the Debtors also obtained "excess insurance policies" from Old Republic Insurance Company ("ORIC"). Under the excess insurance

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[2] By Order entered November 10, 2008, the Court approved the joint administration of the related bankruptcy cases. Order Directing Joint Administration Pursuant to Bankruptcy Code Section 302 & Bankruptcy Rule 1015(B) & Waiving Requirements of Bankruptcy Code Sections 105 & 342(c)(1) & Bankruptcy Rules 1005 & 2002(N), *In re Circuit City Stores, Inc.*, No. 08-35653, ECF No. 77.

[3] The California Department of Industrial Relations issued a certificate of consent for Circuit City to self-insure. *See* Cal. Lab. Code § 3700.

[4] In order to obtain the certificate of consent to self-insure, Circuit City was required to provide collateral to ensure that sufficient funds would be available to satisfy the Debtors' ongoing workers' compensation liabilities. *See id.* § 3701 (effective to Dec. 31, 2012).

2

policies, the Debtors were responsible for the first $300,000.00 owed on any particular claim (the "Retention"), and ORIC insured Circuit City for any "loss" in excess thereof.[5] To secure the Debtors' obligations under the excess insurance policies, the Debtors posted various letters of credit with ORIC. ORIC continues to use those letters of credit to satisfy its obligations as excess insurance carrier.

On January 16, 2009, the Court authorized Circuit City to cease its business operations and liquidate its assets. As part of the liquidation process, the Court approved an agency agreement that allowed professional liquidators to conduct going-out-of-business sales at all of Circuit City's remaining stores from January 17, 2009, to March 8, 2009 (the "Agency Agreement"). Sections 4.1(b) and 10.3 of the Agency Agreement provided, inter alia, that the liquidators assumed all of Circuit City's future workers' compensation obligations.[6] Accordingly, Circuit City incurred no obligation for workers' compensation after January 16, 2009.

On April 3, 2009, after the Debtors ceased business operations, the Director instructed the Fund to assume Circuit City's outstanding workers' compensation obligations. The Fund drew down the full amount of the Letter of Credit and began to administer the outstanding workers' compensation claims.

---

[5] The excess insurance policies provide that ORIC is required to indemnify the Debtors for losses. Losses are defined as "amounts actually paid by [the Debtor] as a self-insurer" Motion, Ex. A-1 at Part 4(e) ("'[L]oss' shall mean only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers Compensation Act . . . ."), Ex. A-2 at Part 1(B) ("Loss means amounts actually paid by you as a self-insurer under the Workers Compensation Law."), Ex. A-3 at Part 1(B) (same as Ex. A-2), Ex. A-4 at Part 1(B) (same as Ex. A-2), Ex. A-5 at Part 1(B) (same as Ex. A-2), Ex. A-6 at Part 1(B) (same as Ex. A-2).

[6] *See* Order Approving Agency Agreement, Store Closing Sales & Related Relief, *In re Circuit City Stores Inc.*, No. 08-35653-KRH (Bankr. E.D. Va. Jan. 16, 2009), ECF No. 1634.

By order entered September 14, 2010, the Court confirmed the Debtors' Modified Amended Second Joint Plan of Liquidation (the "Liquidating Plan").[7] The Liquidating Plan substantively consolidated the Debtors' bankruptcy estates and established the Liquidating Trust to collect, administer, distribute, and liquidate all of the Debtors' remaining assets. The Liquidating Plan generally provided for the transfer of any cause of action held by any of the Debtors to the Liquidating Trust.

On December 23, 2015, the Trustee filed an adversary proceeding against the Director and the Fund to recover the excess proceeds from the Letter of Credit that were not needed to satisfy the Debtors' workers' compensation obligations, and other related claims (the "Prior Adversary Proceeding").[8] The parties entered into the Settlement Agreement in connection with the Prior Adversary Proceeding.[9] Pursuant to the Settlement Agreement, the Fund paid the Trustee the sum of $5,350,000 from the Letter of Credit proceeds that it held and it retained the remaining proceeds to satisfy any continuing obligations on the Debtors' outstanding California workers' compensation claims.

Among other provisions, the Settlement Agreement contained the following release provision:

> **E. Mutual Release.** In consideration of the obligations of the Parties set forth in this Agreement, and conditioned upon payment in full of the L/C Proceeds as described above, and the other

---

[7] *See* Findings of Fact, Conclusions of Law & Order Confirming Modified Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. & Its Affiliated Debtors & Debtors in Possession & Its Official Committee of Creditors Holding General Unsecured Claims, *In re Circuit City Stores Inc.*, No. 08-35653-KRH, ECF No. 8555.

[8] Liquidating Trustee's Complaint for Declaratory Relief & Damages Owed to the Trust, *Siegel v. Cal. Self-Insurers' Sec. Fund* (*In re Circuit City Stores, Inc.*)*,* Adv. Pro. No. 15-03477-KRH (Bankr. E.D. Va. Dec. 23, 2015), ECF No. 1.

[9] In accordance with the terms of the Settlement Agreement, on September 27, 2016, the Parties stipulated to dismiss the Prior Adversary Proceeding. Stipulation of Voluntary Dismissal, *In re Circuit City Stores, Inc.*, Adv. Pro. No. 15-03477-KRH, ECF No. 54.

4

> agreements and obligations to be undertaken by each of the Parties as described herein, the Parties, for themselves, their officers, directors, members, shareholders, employees, beneficiaries, attorneys, successors in interest, and assigns, and anyone claiming by or through any of them, do hereby release and forever discharge each of the other Parties and their officers, directors, members, shareholders, employees, beneficiaries, attorneys, successors in interest, and assigns of and from any and all claims, counterclaims, cross-claims, third-party claims, causes of action, rights, debts, contracts, agreements, demands for payment or other relief, and any obligations of any nature, in law, equity or of an administrative nature, whether now known or unknown, and whether or not such claim is liquidated, or contingent, from the beginning of time, relating to or in connection with any matter described herein, including specifically but not limited to the Proofs of Claim, the L/C, the Return of the L/C Proceeds, the Adversary Proceeding, or arising out of the Parties' relationship in any way, shape or form whatsoever, and any and all other claims between the Parties, except for breach or enforcement of this Agreement. . . .[10]

The Settlement Agreement further provided:

> **E. Waiver of Section 1542.** The Parties recognize, acknowledge, and waive the provisions of California Civil Code Section 1542, which provides:
> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**
> In waiving the provisions of Section 1542 of the California Civil Code, each Party acknowledges that they may discover facts in addition to or different than those which they now believe to be true with respect to the matters released in this Agreement, but agree that they have taken that possibility into account in reaching this settlement, and the releases given in this Agreement shall

---

[10] Confidential Settlement Agreement & Mutual Release at 2-3, *In re Circuit City Stores, Inc.*, Adv. Pro. No. 18-03040-KRH (Bankr. E.D. Va. Jun. 5, 2018), ECF 13 [herein throughout the *Settlement Agreement*]. The provision then provides that the releases as they pertain to the Director shall only apply to allegations regarding Circuit City's self-insured status and not to any of the Director's regulatory authority.

5

remain in effect as a full and complete release notwithstanding the discovery or existence of such additional or different facts, as to which each Party expressly assumes the risk. [11]

In the intervening period between execution of the Settlement Agreement and the commencement of this Adversary Proceeding, the Fund made demands upon ORIC for payment of certain workers' compensation claims of the Debtors under the Debtors' excess insurance policies. As of the filing of this Adversary Proceeding, the Fund had received $19,778.23 from ORIC and had demanded a further reimbursement in the amount of $4,257.94. In the absence of the relief requested by the Trustee, the Fund and the Liquidating Trust anticipate that the Fund will make additional demands upon ORIC.

The Trustee filed this Adversary Proceeding seeking a determination that the Settlement Agreement released the Fund's derivative claims against ORIC and, that by making such demands for payment, the Fund had breached the Settlement Agreement. The Fund maintained that it was not in breach because it did not intend the releases contained in the Settlement Agreement to apply to ORIC.

Rule 56 of the Federal Rules of Civil Procedure, as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs summary judgment in this Adversary Proceeding. A court should grant a motion for summary judgment if "there is no genuine issue

---

[11] *Id.* at 3. Section 1542 of the California Civil Code provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Cal. Civ. Code § 1542. The California state legislature has enacted new legislation (filed with the Secretary of State on July 20, 2018) that would modify the terms but not the substance of the law. DEBTORS AND CREDITORS—RELEASE, 2018 Cal. Legis. Serv. Ch. 157 (S.B. 1431) ("A general release does not extend to claims *that* the creditor *or releasing party* does not know or suspect to exist in his or her favor at the time of executing the release * * * *and that,* if known by him or her * * *, would* have materially affected his or her settlement with the debtor *or released party*." (emphasis added)) These changes will be retroactive in effect but have no material effect upon the merits of this Adversary Proceeding. *See id.*

6

as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (C), (E), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

The only dispute in this case is whether the release provision included in the Settlement Agreement applies to the self-insurance obligations of the Debtors that are insured by ORIC. The Fund maintains that, despite the plain language utilized in the Settlement Agreement, the Court should interpret the releases narrowly to exclude claims insured by ORIC from its scope because the Fund did not intend for the releases to apply to ORIC. To that end, the Fund sought to introduce extrinsic evidence of the Fund's intent in negotiating and executing the Settlement Agreement.

In determining the merits of the Motion, the Court must first determine what law applies. "A bankruptcy court applies the choice of law rules of the forum state." *Stanworth v. Bank of Am., N.A.* (*In re Stanworth*), 543 B.R. 760, 772 (Bankr. E.D. Va. 2016) (citations omitted). As the forum state is Virginia, Virginia choice of law rules apply. "Virginia courts generally enforce choice of law provisions that decide issues of substantive law, whereas procedural questions are decided by reference to Virginia law." *Id.* The Settlement Agreement contains a

choice of law provision providing that California law shall govern. Accordingly, California substantive law applies to the dispute at issue here.[12]

"[I]nterpretation of a settlement agreement is governed by the same principles applicable to any other contractual agreement." *Winet v. Price*, 4 Cal. App. 4th 1159, 1165, 6 Cal. Rptr. 2d 554 (1992) (citing *Edwards v. Comstock Ins. Co.*, 205 Cal. App. 3d 1164, 1167, 252 Cal. Rptr. 807 (Ct. App. 1988)). When interpreting a contract generally, California law requires the Court "to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. For written contracts specifically, such as the Settlement Agreement at issue here, "the intention of the parties is to be ascertained from the writing alone, if possible," *id.* § 1639, but the Court may rely on extrinsic evidence "to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement." Cal. Civ. Proc. Code § 1856(g). As general principles of construction, the Court must interpret the contract "as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." *Id.* § 1643. Words are "to be understood in their ordinary and popular sense," *id.* § 1644, although "[t]echnical words are to be interpreted as usually understood by persons in the profession or business to which they relate," *id.* § 1645.

The Court finds that the Settlement Agreement in the case at bar is facially unambiguous. However, due to the Parties' disagreement over its meaning, the Court must engage in a two-step inquiry to determine whether the Settlement Agreement is ambiguous. First, "the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the

---

[12] "The parol evidence rule is not one of evidence, as the expression might imply, but is in reality a rule of substantive law." *Whitt v. Godwin*, 205 Va. 797 (1965) (citations omitted); *see also Weslaco Holding Co., LLC v. Pittman*, Civil Action No. 2:06cv598, 2007 WL 2287882 (E.D. Va. Aug. 6, 2007). Accordingly, California's parol evidence rule applies to determine whether the Fund can introduce extrinsic evidence of intent.

8

contract is *reasonably* susceptible of a particular meaning." *Integrated Glob. Concepts, Inc. v. j2 Glob., Inc.*, No. C-12-03434-RMW, 2014 WL 1230910, at *4 (N.D. Cal. Mar. 21, 2014) (citing *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39, 442 P.2d 641, 645 (1968)) (emphasis added). Second, based on the extrinsic evidence proffered, if the Court determines that the contract is "reasonably susceptible" to the meanings at issue, the Court then should admit the extrinsic evidence and use it to aid in interpreting the contract. *Id.* However, under California law, "parol evidence is admissible only to prove a meaning to which the language is '*reasonably* susceptible' not to flatly contradict the express terms of the agreement." *Winet v. Price*, 4 Cal. App. 4th 1159, 1167, 6 Cal. Rptr. 2d 554 (1992) (internal citations omitted) (emphasis added).

> In the context of interpreting the scope and breadth of a disputed third-party release,
>> [t]he trier of fact must decide how a reasonable person in the releasing party's shoes would have believed the other party understood the scope of the release. Thus, testimony by the releasing party regarding who *he* thought he was releasing, while it may serve to explain the situation, does not determine the legal effect of the release. How a reasonable person would view the other party's understanding of the release is generally a matter of inference based on the extrinsic evidence. Unless that extrinsic evidence is in conflict, the question is one of law. On a motion for summary judgment, the court may determine which inferences are "reasonably deducible from the evidence," and may grant summary judgment if there is no conflict with other reasonable inferences or evidence.

*Neverkovec v. Fredericks*, 74 Cal. App. 4th 337, 351–52, 87 Cal. Rptr. 2d 856, 867 (1999) (internal citations omitted) (emphasis in original).

The Court finds that the extrinsic evidence proffered by the Fund is inadmissible as it does not does not make the release provision susceptible of the meaning advanced by the Fund, but rather flatly contradicts the express terms of the Settlement Agreement. *See Winet*, 4 Cal.

9

App. 4th at 1167 (internal citations omitted) (emphasis added). The terms of the Settlement Agreement are clear and unambiguous that the Parties released each other and their "beneficiaries" from "any and all claims" "whether now known or unknown" "arising out of the Parties' relationship in any way, shape or form whatsoever." Settlement Agreement, ECF No. 13 at 2-3.

The Court rejects the Defendants' argument that discovery in this case would establish the Fund's subjective but unexpressed intent that the release would not apply to the Debtors' self-insurance claims insured by ORIC. As a preliminary matter, the applicable legal standard is not subjective intent, but rather what "a reasonable person in the releasing party's shoes would have believed the other party understood the scope of the release." *Neverkovec*, 74 Cal. App. 4th at 351–52 (internal citations omitted) (emphasis in original). Given the history of the relationship between the Parties and the express terms of the Settlement Agreement, a reasonable person in the Fund's position would have understood the release to include ORIC. Even assuming arguendo that subjective intent did apply, the Fund was unable to identify with any particularity evidence that the releases did not apply to ORIC. As such, the Court finds that the Settlement Agreement is unambiguous and therefore turns to the plain language to determine whether the releases applied to ORIC.

The plain language of the Settlement Agreement indicates that the Settlement Agreement released any and all claims of the Fund relating to the Debtors' workers' compensation, including but not limited to any claims of the Fund to the excess insurance.[13] The recitals of the Settlement Agreement provide in pertinent part:

---

[13] The release applied to all claims "arising out of the Parties' relationship in any way, shape or form whatsoever." *See* Settlement Agreement ECF No. 13 at 3.

> WHEREAS, the Parties wish to amicably settle all claims, disputes, and causes of action they have and may have against each other related to, set forth in, or arising out of the Adversary Proceeding, the Proofs of Claim, the L/C Proceeds and all underlying facts, events and occurrences associated therewith, and any other aspect of their relationship and/or claims arising therefrom that exist or may have existed between them . . . .[14]

The foregoing clearly evidences the intent of the Parties to settle any and all claims related to the Debtors' California worker's compensation, claims to which would necessarily include any claims of the Fund to the excess insurance.

As the Settlement Agreement provided for the release of all claims between the Parties, the Settlement Agreement effectively eliminated the Fund's ability to collect against ORIC. Under the ORIC excess insurance policies, ORIC agreed to indemnify the Debtors for any "loss." "Loss" is defined as "amounts actually paid by [the Debtors] as self-insurer" or "such amounts as are actually paid by the Insured."[15] The Parties do not contest that the Settlement Agreement released the Debtors' obligation to pay any monies to the Fund on account of claims in excess of the Retention. As the Debtors have no obligation to pay, no amounts may be "actually paid" by the Debtors as required to constitute a "loss" and trigger coverage under the ORIC excess insurance policies. Without a loss to trigger coverage, the Fund has no mechanism by which to seek recovery from the ORIC excess insurance.

Moreover, the releases provide explicitly for the release of all beneficiaries. Settlement Agreement, ECF No. 13 at 2-3 ("[T]he Parties . . . do hereby release and forever discharge each of the other Parties and their . . . beneficiaries . . . ."). The term "beneficiary" is not a defined term in the Settlement Agreement. However, common usage defines "beneficiary" to include

---

[14] *Id*. Section II.A of the Settlement Agreement incorporated the recitals by reference into the terms of the agreement. *Id.* at § II.A.

[15] *See supra* note 5.

"[s]omeone who is entitled under a letter of credit to draw or demand payment." BENEFICIARY, Black's Law Dictionary (10th ed. 2014). ORIC is a beneficiary. ORIC continues to hold letters of credit posted by the Debtors upon which it has drawn and continues to draw for payment of amounts exceeding the Retention on various workers' compensation claims against the Debtor. As a beneficiary of the Debtors, the releases contained in the Settlement Agreement clearly and unambiguously released any and all claims of the Fund against ORIC.

Further evidence of the Parties' intent to fully and finally resolve all issues regarding worker's compensation issues is the fact that the Parties did not expressly carve out any claims of the Fund as to excess insurance coverage or as to ORIC. The Parties were clearly able to do so and, in fact, did include a carve-out as it relates to certain regulatory authority of the Director. *See* Settlement Agreement, ECF No. 13 at 2-3. The fact that the Parties did not include such a carve-out as it relates to ORIC or to the excess insurance policies strains the credulity of the Fund's assertion that the releases were not intended to include ORIC and the excess insurance.[16]

The Court finds that the case at bar is analogous to *Winet v. Price*. 4 Cal. App. 4th 1159. In the *Winet* case, there was a fee dispute between an attorney and client, which subsequently settled. The settlement agreement included broad mutual releases of both known and unknown claims, similar to the release provision at issue here. Later, the client brought a malpractice claim against the attorney. The court rejected the client's argument that the release should not be interpreted to apply as to the malpractice claim because it was not the client's subjective intent to release such claim. In making that determination, the court emphasized that it was the only

---

[16] By inclusion of Section E of the Settlement Agreement, the Fund further waived any right to claim modification or limitation of the releases due to the "discovery or existence of . . . additional or different facts, as to which [the Fund] expressly assume[d] the risk." Settlement Agreement, ECF No. 13 at § 11.E.

transaction at issue between the parties and the client was represented by counsel in negotiating the terms of the fee settlement agreement. *Id.* at 1170.

Similarly, in the case at bar, the Fund was represented by counsel in the negotiation and execution of the Settlement Agreement. The claims at issue in the Settlement Agreement arise out of the same facts and circumstances upon which the Fund issued demands to ORIC. Just as the California court rejected the client's purported subjective intent in *Winet*, so too must this Court reject the Fund's purported subjective intent. *See id.* at 1173 ("Those engaged in contract law and litigation are in great need of the availability of ironclad and enforceable general releases.").

For these reasons, the Court finds that there are no material facts in dispute and that, as a matter of law, the Settlement Agreement released any and all claims of the Fund against the Trust, including but not limited to any claims against ORIC. The Court further finds that the Fund has breached the Settlement Agreement by issuing demand upon ORIC. Accordingly, the Court will grant the Motion.

A separate order shall issue.

ENTERED:   August 27, 2018

                                                      /s/ Kevin R. Huennekens
                                      UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 8/27/18